Elliot Gale (Bar #263326)
egale@gajplaw.com
Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, & Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, CA 95661
916-290-7778 ph
916-282-0771 fax

Attorneys for Plaintiff
Cindy Hipwell

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| Cindy Hipwell<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Wells Fargo Bank N.A.; Bank of America N.A.<br><br>　　　　　　　　　Defendants. | CASE NO.<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violations of Electronic Funds Transfer Act 15 U.S.C. §1693c<br>2. Violations of Electronic Funds Transfer Act 15 U.S.C. §1693f;<br>3. Violations of Electronic Funds Transfer Act §1693I;<br>4. Breach of Contract<br>5. Unfair Competition |

COMES NOW Plaintiff Cindy Hipwell (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under 15 U.S.C §1693 et. seq. and involves both Wells Fargo Bank, N.A. ("Wells Fargo") and Bank of America, N.A.'s ("Bank of America") violations of the Electronic Funds Transfer Act ("EFTA"), breach of contract, and unfair competition stemming from unauthorized transactions regarding Plaintiff's bank account held with Wells Fargo.

2. The United States Congress passed the EFTA to protect individual consumers, like Plaintiff, engaging in electronic fund transfers and remittance transfers to establish trust and predictability amongst consumers using electronic methods of payments where errors or fraud occur.

//

## JURISDICTION & VENUE

3. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

4. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1693

5. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

6. The Plaintiff resides in the Eastern District of California and the events giving rise to Plaintiff's claims occurred within this judicial district.

7. Wells Fargo Bank, N.A. engages in business throughout the State of California, and maintains thousands of physical locations and branches within the State of California, including hundreds within this judicial district.

8. Bank of America, N.A. engages in business throughout the State of California, and maintains thousands of physical locations and branches within the State of California, including hundreds within this judicial district.

## FACTUAL ALLEGATIONS

9. On Wednesday November 20, 2024, Plaintiff received a phone call from a number identified on her cell phone belonging to Wells Fargo and showing 877-499-6920.

10. Plaintiff answered the call and spoke with an individual who identified himself as Shane Fredeck ("Fredeck") with Wells Fargo's Fraud and Investigation Department.

11. Fredeck informed Plaintiff the call was being recorded.

12. Fredeck then informed Plaintiff that someone had wired $25,000 out of her business account and he was calling to verify whether Plaintiff had authorized the transaction.

13. Plaintiff stated that no such authorization had been given and she was not familiar with any type of transaction involving that amount of money.

14. Plaintiff then logged into her Wells Fargo account and noticed that no such transaction had occurred.

15. Plaintiff told Fredeck that she did not see any transfer.

16. Fredeck responded that they had stopped the transfer as suspicious, which is why he was calling Plaintiff, but the money was in fact transferred.

17. Fredeck then explained to Plaintiff that two different individuals had gone into Wells Fargo branches in Granite Bay and Incline Village and posed as Plaintiff, complete with with an ATM card and ID, and wired $48,500 from each branch out of Plaintiff's savings account.

18. Plaintiff was told that a total of $122,000.00 had been wired out of her account.

19. Fredeck assured Plaintiff, however, he could retrieve the funds but Plaintiff's accounts would be frozen and online access restricted until the fraud had been resolved.

20. Plaintiff was informed that, in order to prevent the wire transfers, she would need to set up new bank accounts.

21. At this time Plaintiff became suspicious and told Fredeck she believed this was a scam.

22. Fredeck assured Plaintiff it was not and to verify the phone number he was calling from belonged to Wells Fargo.

23. Plaintiff used another phone to call the number that appeared on her cell phone connected to Fredeck.

24. The number connected to a Wells Fargo phone tree.

25. From the phone tree Plaintiff selected the fraud department but was placed on hold.

26. While on hold Plaintiff got back on the call with Fredeck and asked him to verify his ID.

27. Fredeck then told Plaintiff her address, how many accounts she had associated with that address, the types of accounts, and the mailing address associated with the accounts.

28. At this time Plaintiff was still on hold and attempting to reach someone in Wells Fargo's fraud department through the phone tree.

29. Fredeck explained to Plaintiff Wells Fargo believed the perpetrator to be an employee at one of the Wells Fargo branches and they wanted to catch the employee, but in order to do so needed Plaintiff to set up a second wire transfer for $25,000.

30. Plaintiff questioned the suggestion but, given that Wells Fargo's number appeared on her phone, continued to engage with Fredeck.

31. Fredeck explained that they were setting up new accounts for Plaintiff in order to bait the insider.

32. In the meantime, Plaintiff's call to Wells Fargo was finally answered.

33. The individual on the phone told Plaintiff they could not transfer her to the fraud department but gave Plaintiff another number to call.

34. Plaintiff hung up and called the new number and was greeted by the exact same phone tree.

35. At this time Fredeck was back on the phone stating he was ready for Plaintiff to wire the funds.

36. Plaintiff refused until Fredeck could prove that he was from Wells Fargo.

37. Fredeck then told Plaintiff the exact amount of funds in each of Plaintiff's bank accounts.

38. Fredeck then also told Plaintiff her login profile information.

39. Satisfied Plaintiff continued to interact with Fredeck.

40. Meanwhile Plaintiff's second call to Wells Fargo was still on hold.

41. Fredeck then explained to Plaintiff that the reversal wire required use of the new account number and name they had setup.

42. Fredeck told Plaintiff to use the name "Brandon Sampson" and to use the address "568 Lucile Dr., Incline Village, CA" to set up the reversal account.

43. Fredeck gave Plaintiff the routing number and account number which appeared as a Bank of America account.

44. Plaintiff had now been on hold with Wells Fargo's phone tree for over an hour.

45. During this time Fredeck would place Plaintiff on hold and state he was taking a call from the Incline Village branch and Granite Bay branches to set up an operation to catch the insider.

46. Plaintiff wired the $25,000.

47. At this time Plaintiff noticed that Wells Fargo had unilaterally disconnected her from hold on the other line.

48. No one at Wells Fargo ever picked up the phone.

49. Fredeck thanked Plaintiff and then told Plaintiff she needed to physically go into the Granite Bay Wells Fargo branch and wire the funds to the Incline Village branch so they could catch the insider immediately at the Incline Village location.

50. Plaintiff arrived at the Granite Bay Wells Fargo location and Fredeck told Plaintiff to wait in the car while the Wells Fargo agent at Incline Village finished getting setup.

51. Plaintiff was then instructed to enter the Granite Bay branch where she met with a banker named Forrest.

52. Forrest set up the wire.

53. Plaintiff was told by Fredeck the wire was going into her shadow account via Bank of America.

54. Plaintiff was given the name Suze Pierre, an address, routing number, and account number.

55. Forrest had Plaintiff sign several times on his desk tablet to confirm the information.

56. Forrest did not go over any of the wire transfer request fraud alerts nor did he alert Plaintiff to its existence as part of the wire transfer process.

57. Plaintiff exited the branch and Fredeck told Plaintiff that they had in fact been able to trace the wires and arrested the insider at the Incline Village location.

58. Fredeck told Plaintiff he would contact her the next day to give Plaintiff return Plaintiff's funds.

59. Fredeck never called Plaintiff

60. Plaintiff therefore called Fredeck but another voice answered the number given and simply said "hello" and nothing more.

61. Plaintiff immediately became suspicious and logged into her accounts and realized she had been scammed.

62. Plaintiff immediately went to the Wells Fargo branch and spoke with Forrest.

63. At this time less than eight hours had passed since the funds had been wired.

64. Forrest called the fraud department who allegedly knew of this scam but apparently had not alerted local branches.

65. Plaintiff closed all of her accounts and opened new ones at Wells Fargo.

66. On the advice of Forrest, Plaintiff went immediately to her local Bank of America branch to alert them that Bank of America was holding $122,000 of fraudulent transfers in a fraudulent account.

67. When Plaintiff arrived at Bank of America the teller told Plaintiff they could do absolutely nothing and refused to take any of Plaintiff's information including the account number and routing number associated with the scam account.

68. Plaintiff then reported the incident to local law officials and the Federal Bureau of Investigation.

69. On November 26, 2024, Denise, with Wells Fargo's fraud department, called Plaintiff and informed her that she was working on the case.

70. At that time Denise informed Plaintiff that Wells Fargo and Bank of America would not attempt to retrieve Plaintiff's funds unless she signed an indemnity agreement.

71. Moreover, if Plaintiff did not sign the indemnity agreement Wells Fargo would simply stop working on her case and close the file.

72. On Wednesday November 27, 2024, the Placer County Sheriff's office told Plaintiff that they were able to place a 90 day hold on the funds but it remained unclear what funds remained in the account.

73. On Friday November 29, 2024, Denise from Wells Fargo again called Plaintiff and inquired about whether she would sign the indemnification agreement.

74. Denise again reiterated that no steps would be taken by Wells Fargo unless she signed the agreement.

75. Denise was aggressive in the handling of the claims and seemed focused on the indemnity agreement rather than actually helping Plaintiff address the fraud.

76. Denise, undeterred from her mission to absolve Wells Fargo of any liability, called again on December 2, 2024 about the indemnification.

77. Denise was so focused on protecting Wells Fargo, rather than assisting a longtime customer, that she repeatedly stated that Wells Fargo would not help her at all until she agreed to release Wells Fargo from any liability or wrongdoing.

78. Plaintiff informed Denise that a 90-day hold was placed on the fraud account by law enforcement.

79. Denise, concerned that Wells Fargo would be exposed to legal liability, again told Plaintiff that the process would take much longer than 90 days and that she needed to sign the indemnity agreement, or she would not receive any further assistance from Wells Fargo.

80. On December 3, 2024 Plaintiff signed the indemnity agreement under extreme duress and coercion as Denise and Wells Fargo left Plaintiff with no other realistic alternative.

81. Plaintiff has not received any updates from Wells Fargo.

//
//
//
//

**FIRST CAUSE OF ACTION**
(Violation of the Electronic Funds Transfer Act 15 U.S.C. §1693c)
(Against Defendant Wells Fargo Bank, N.A.)

82. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

83. Plaintiff used an electronic fund transfer as defined in 15 U.S.C. §1693a(7).

84. 15 U.S.C. §1693c mandates that consumers shall receive, at the time of transfer, certain disclosures including but not limited to the consumer's liability for unauthorized electronic transfers, limitations on frequency of transfers, the right to stop certain transfers, and a financial institutions liability to a consumer under 15 U.S.C. 1693h.

85. These disclosures aim to educate consumers about how to protect themselves from fraud by limiting liability for unauthorized transactions and providing mechanisms for dispute resolution in cases of fraud.

86. Wells Fargo failed to provide disclosures to Plaintiff until well after the transfer occurred.

87. The disclosures were never identified to Plaintiff nor was Plaintiff aware disclosures had been provided.

88. Attached to the disclosures that were never provided to Plaintiff until after the transfer was a warning about individuals calling and pretending to be Wells Fargo employees.

89. Had Plaintiff been provided the disclosures prior to initiating the in-branch transfer, Plaintiff would have known that unauthorized transfers exist, Plaintiff had rights to dispute those transfers, and that fraudulent schemes exist.

90. Wells Fargo failed to educate or otherwise provide Plaintiff with those disclosures despite learning enough from Plaintiff that it should have been aware of the suspicious activity surrounding Plaintiff's request.

91. Wells Fargo never alerted Plaintiff of the disclosures nor to any of the attached warnings of fraud.

92. But for Wells Fargo's failure to provide said disclosures the electronic transfer at issue would not have occurred.

93. Plaintiff has experienced severe emotional distress manifesting in sleeplessness and anxiety. Plaintiff suffers from Lymphocytic Colitis which is exacerbated by stress. This ordeal has caused Plaintiff to be in a chronic episode for weeks.

**SECOND CAUSE OF ACTION**
(Violation of Electronic Funds Transfer Act 15 U.S.C §1693f)
(Against Defendants Wells Fargo Bank N.A. and Bank of America N.A.)

94. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

95. Plaintiff received documentation from Wells Fargo and Bank of America under 15 U.SC. §1693d(a), (c), or (d) and within less than twenty-four hours after receiving such documentation, notified Wells Fargo and Bank of America of an error.

96. Plaintiff provided Wells Fargo and Bank of America with the reasons for the error.

97. Thereafter Wells Fargo refused to investigate Plaintiff's error until Plaintiff signed an indemnification agreement.

98. Thereafter Bank of America refused to investigate Plaintiff's error at all.

99. The acts of Wells Fargo and Bank of America alleged herein constitute a violation of §1693f.

100. As a direct and proximate cause of Wells Fargo and Bank of America's actions plaintiff experienced severe emotional distress manifesting in anxiety and sleeplessness. Plaintiff suffers from Lymphocytic Colitis which is exacerbated by stress. This ordeal has caused Plaintiff to be in a chronic episode for weeks.

**THIRD CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1693I – Waiver of Rights)
(Against Defendant Wells Fargo Bank, N.A.)

101. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

102. 15 U.S.C. §1693I prevents a consumer by way of writing or other agreement waiving any right conferred or cause of action created by 15 U.S.C. § 1693.

103. Wells Fargo refused to work or investigate the fraudulent transfer until Plaintiff signed a waiver of rights indemnifying Wells Fargo.

104. Such an attempt by Wells Fargo to have Plaintiff waive her rights under 15 U.S.C. 1693 violates 15 U.S.C. §1693f.

105. As a direct a proximate cause of Wells Fargo's violation of 15 U.S.C. §1693f Plaintiff lost days of investigation and experienced extreme emotional distress manifesting in sleeplessness

and anxiety. Plaintiff suffers from Lymphocytic Colitis which is exacerbated by stress. This ordeal has caused Plaintiff to be in a chronic episode for weeks.

### FOURTH CAUSE OF ACTION
(Breach of Contract)
(Against Defendant Wells Fargo Bank, N.A.)

106. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

107. Plaintiff and Wells Fargo entered into an "Online Access Agreement."

108. Under the terms of the agreement Plaintiff and any authorized person would have access to Plaintiff's online account information.

109. Nowhere in the agreement between Plaintiff and Wells Fargo did Wells Fargo have the right, implied or otherwise, to allow unauthorized third-party access to Plaintiff's account information.

110. Wells Fargo knowingly allowed unknown third parties access to Plaintiff's online account information.

111. These individuals gained access to Plaintiff's personal sensitive information including, account numbers, account transactions, account balances, home addresses, and mailing addresses.

112. These individuals then used this information to deceive Plaintiff into believing these individuals were Wells Fargo employees when they contacted Plaintiff.

113. As a direct and proximate cause of Wells Fargo's breach Plaintiff was deceived into believing third party fraudsters were Wells Fargo employees and Plaintiff was coerced into two fraudulent wire transfers.

114. As a result of this breach Plaintiff has lost $122,000, incurred substantial attorney's fees, and has experienced severe emotional distress including anxiety and sleeplessness.

### FIFTH CAUSE OF ACTION
(California Unfair Competition Law Cal Bus. Prof. Code §§ 17200, et. seq.)
(Against Defendants Wells Fargo Bank, N.A. and Bank of America, N.A.)

115. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

116. Plaintiff and Defendant are each persons as defined by Cal. Bus. & Prof. C. § 17201. Cal. Bus. & Prof. C. §17204 authorizes private right of action.

117. Defendant Wells Fargo Bank engaged in unlawful and unfair business acts when Wells Fargo refused to investigate Plaintiff's case unless Plaintiff signed an indemnification agreement in violation of 15 U.S.C. § 1693I.

118. Defendant Bank of America engaged in unlawful and unfair business acts when it failed to investigate Plaintiff's case at all under 15 U.S.C. § 1693f.

119. Such actions were done with the intent to delay and frustrate Plaintiff's ability to retrieve her funds and constitute both unlawful and unfair practices.

120. Plaintiff seeks an injunction requiring Defendant to immediately return Plaintiff's funds.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from allowing the transfers to be completed;
2. Award actual damages or statutory damages under 15 U.S.C. §1693m(a)(1); 15 U.S.C. §1693m(a)(2)(A);
3. Actual damages to be proven at trial;
4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C 1693m(a)(3).
5. For determination by the Court that Defendant's actions were willful
6. An injunction requiring Defendants to immediately return Plaintiff's funds.

Gale, Angelo, & Johnson, P.C.

Dated: December 12, 2024

*/s/ Elliot Gale*
Joe Angelo
Elliot Gale
Attorneys for Plaintiff